IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES HOLLAND,

          Plaintiff,

    v.

BYNUM & SONS PLUMBING,
INC., et al.,

          Defendants.

CIVIL ACTION FILE

NO. 1:11-CV-00908-JFK

**MEMORANDUM OPINION INCLUDING FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

This case is before the court following a bench trial conducted on June 23 and 25, 2014.  [Docs. 68 and 69].[1]  On March 11, 2011, Plaintiff James Holland filed a complaint against Defendants Bynum & Sons Plumbing and Scott Bynum alleging that Defendants improperly classified him as an independent contractor rather than as an employee and failed to pay him the wages he was entitled to under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  [Doc. 1].  After Defendant Bynum & Sons Plumbing filed for Chapter 11 bankruptcy, triggering the automatic stay of proceedings, pursuant to 11 U.S.C. § 362(a), as to that Defendant, the case proceeded

---

[1]Citations to the transcript of the bench trial are:  (Tr. 6/23/14 at ) and (Tr. 6/25/14 at ).

against Defendant Scott Bynum ("Bynum"), who is proceeding *pro se*.  [Docs. 18 and 24].

Plaintiff filed a motion for summary judgment on December 3, 2012.  [Doc. 35]. After consideration of the briefs of the parties, which District Judge Forrester, then the presiding judge on the case noted did not comply with the court's local rules [Doc. 46 at 2], the Judge held that Defendant Bynum was an employer as defined by 29 U.S.C. § 203(d) of the FLSA and, therefore, that he is personally liable for any damages resulting from violations of the FLSA [Id. at 5-6].  The Judge further held that Plaintiff had been improperly classified as an independent contractor under the provisions of the FLSA and, instead, was an employee of Defendant Bynum and entitled to minimum and overtime wages.  [Id. at 7-10].

As to the issue of damages flowing from any failure of Defendant Bynum to pay Plaintiff minimum wage and overtime compensation due him under the FLSA, the Judge found, based on the incomplete record before him, that he did "not presently have enough information before [him] to even guess the overtime hours Holland worked" and noted that the evidence was disputed, especially in light of the lack of official records from the employer.  [Doc. 46 at 11-12].  Although the Judge noted having Plaintiff's 1099s demonstrating the total amount he was paid for the years

2

employed at Bynum & Sons Plumbing, he stated that this information does not provide Plaintiff's hourly rate. [Id. at 12]. Accordingly, the Judge could not determine the amount, if any, of damages. [Id.].

The Judge further found that, once the amount of damages was determined, pursuant to 29 U.S.C. § 216(b), Plaintiff was entitled to liquidated damages, "which should be equal to actual damages[.]" [Id. at 12-13]. And, finally, the Judge found that Defendant Bynum acted willfully in mis-identifying Plaintiff as an independent contractor and that, therefore, the three-year statute of limitations applied in this case.[2] [Id. at 13-14].

On March 10, 2014, Plaintiff and Defendant Bynum consented to proceed before the undersigned on a bench trial to determine the issue of damages for any violation of the FLSA. [Doc. 60]. The bench trial was held on June 23 and 25, 2014. [Docs. 68 and 69]. Plaintiff filed a post-trial brief in support of his claims for FLSA damages. [Doc. 72]. And Plaintiff filed a motion [Doc. 73] for approval of attorney's fees and

---

[2]The period for which Plaintiff could seek damages was March 23, 2008, through February 2011, when his employment ended. (Tr. 6/23/14 at 2-3). However, due to Plaintiff's failure to provide supporting documentation, in this case, his 2011 federal tax form, to Defendant Bynum by the deadline set by the court, Plaintiff withdrew his request for damages for any FLSA violations occurring after December 31, 2010. (Id. at 16-17).

3

costs.  Defendant Bynum did not file a post-hearing brief or a response to the motion for fees and costs.

## I.   Bench Trial Evidence

With respect to the evidence introduced during the bench trial, Plaintiff Holland objected to the introduction by Defendant Bynum of any Bynum & Sons Plumbing records pertaining the hours that he worked and his compensation.  (Tr. 6/23/14 at 7-11).  This dispute over the introduction of such records arose due to Defendant Bynum's failure to produce the records, in response to discovery requests, during the discovery period.  (Id.).  After the case was stayed against Defendant Bynum & Sons Plumbing, Plaintiff sought from Defendant Bynum business records relating to Plaintiff's compensation and hours of employment.  In response to those discovery requests, Defendant Bynum stated that he did not have possession of the records and that Plaintiff should seek to obtain the records from the business.  [Doc. 26, Exhibit 1]. In ruling on Plaintiff's objection to Defendant Bynum introducing business records at the bench trial, the court determined that Defendant Bynum, due to his relationship to the business and because he was able to obtain some of the records in preparation for the bench trial, had authority to access and produce the business records in response to discovery requests and, therefore, could not introduce the records during the bench

4

trial.  (Tr. 6/23/14 at 11-12).  Plaintiff did not, during discovery or in preparation for the bench trial, apparently make any attempt to obtain directly from Bynum & Sons Plumbing the business records regarding his compensation or hours of employment.

Kimberly Saunders, who is Plaintiff Holland's fiancé and has been in a relationship with him for seventeen years (with three children a result of that relationship), was employed by Bynum & Sons Plumbing as an Office Dispatcher from the end of 2006/early 2007 through sometime in May 2010.  She was terminated from her employment.  (Tr. 6/23/14 at 27-28).  Her duties included scheduling customer appointments and dispatching the eight to ten plumbers working for the business to the appointments.  (Id. at 28-29).  The normal operating hours for the business was 8:00 a.m. to 4:00 p.m., Monday through Friday, and on Saturdays until noon.  (Id. at 29).  Any emergency appointments needing attention after those hours or on Sunday were handled by the dispatcher on call and routed out to one of the plumbers.  (Id.).  Although Saunders was not aware of the status of each plumber each day, she would have an idea of how long into the evenings each plumber, including Plaintiff Holland,[3] might be working and which appointments remained on the schedule.  (Id. at 30-31).

---

[3]Saunders testified that Plaintiff started working at Bynum & Sons Plumbing a few months after she began her employment, that is, in approximately November or December of 2007.  (Id. at 34).

5

The plumbers, including Plaintiff Holland, covered appointments to the north in Gainesville, Georgia, and to the south in Valdosta and Bainbridge, Georgia, as well as in Alabama. (Id. at 31, 33, 49). Plaintiff Holland regularly worked six days a week and was on call on Sundays approximately once every month and a half.[4] He reported to work between 8:00 and 8:30 a.m. and did not arrive at home in the evenings until between 9:00 and 10:00 p.m. (Id. at 32-35, 49-51). During the relevant time period, Saunders stated that she and Plaintiff Holland took two weeks of vacation time each year. (Id. at 36, 40). Although not providing any specific year, Plaintiff Holland testified that he worked on a New Year's Day and one Easter and that he has worked on the Fourth of July and Christmas Eve. (Tr. 6/25/14 at 15-16). Plaintiff Holland did not work Memorial Day, Labor Day, Thanksgiving, and Christmas Day. (Id. at 16-17). Plaintiff Holland did not work one week in September 2009, when the business was closed due to flooding.[5] (Id. at 17). He also did not work four days in January 2010

---

[4]When on call on Sundays, until noon, Plaintiff Holland was not required to be at the business. (Id. at 55-56).

[5]Information regarding the timing of the flood is found at: http://www.nrcs.usda.gov/wps/portal/nrcs/detail/ga/newsroom/?cid=nrcs144p2_021 919 (last visited September 4, 2014).

AO 72A
(Rev.8/82)

when the business was closed due to snow[6] and one week in January 2010 due to an eye injury.  (Id. at 17, 22).  Plaintiff testified that he did not work on the following days in 2010 due to attendance at plumbing school:  October 16, 23 and 30; November 6, 13, 16, 20; and December 6.  (Id. at 17).

Plaintiff Holland utilized a vehicle provided by Bynum & Sons Plumbing when working and drove that vehicle home in the evenings.  (Id. at 49).  He was compensated for his work on commission, approximately 25% of the amount billed to each customer.  (Id. at 51).  Before that commission was paid, the business deducted certain expenses, such as, the supplies or parts needed for the plumbing appointment, whether those supplies or parts were obtained from the business or had to be purchased off-site such as from Lowe's.  (Id. at 51-52).  Plaintiff Holland was not "paid back" for the cost of the supplies or parts used for a plumbing job.  He received the percentage of the total bill charged the customer, which included the cost for those supplies and parts, as his commission.  (Id. at 52).  When asked "[w]hat other things . . . Bynum & Sons charge[d him] for before they paid you the money that showed up on a 1099[,]" Plaintiff Holland listed these items:  uniforms, gas, worker's compensation, liability

---

[6]Information regarding the timing of this snow event is found at: http://www.ajc.com/news/news/local/a-brief-history-of-atlantas-snow-horrors/nQbZC (last visited September 4, 2014).

insurance, automobile insurance, $145.00 per week for use of the vehicle, and tires.[7]
(Id. at 53-54).  Plaintiff also stated that, in addition to these "things" (that is, the items
that were deducted by Bynum & Sons Plumbing before he received his compensation),
he had other expenses which were identified as business expenses on his federal
income tax returns, such as, gas for the vehicle[8] and repairs on the vehicle.  (Id. at 53).

Plaintiff Holland identified for the record his Exhibit 1 which is a copy of
selected pages from his 2008 federal tax return.  (Tr. 6/23/14 at 41-43).  The return was
prepared by an accountant.  (Id. at 43).  On cross-examination, Plaintiff Holland was
questioned about specific entries on the Profit and Loss From Business page (Exhibit
1, 08-1) and what expenses supported the entries.  (Id. at 57-59).  Plaintiff was not able
to explain the entries, stating that he kept all of his receipts - "every receipt that I have
ever - that I use when I am out in the field that I keep[,]" and that he gives everything
to his accountant to prepare the tax returns.  (Id. at 58).  Although Plaintiff Holland

---

[7]Plaintiff specifically testified that, when his vehicle needed tires, the cost would
come out of his pay check, that is, before he was paid his commission.  He confirmed
that testimony even when his attorney pointed out that tires were listed on his tax
returns as a business expense incurred by Plaintiff after receiving his compensation.
(Id. at 53-54).

[8]Plaintiff Holland previously testified that gas for the vehicle was an expense
deducted from his commission before he was paid.  (Id. at 53).

8

stated that he did not keep a daily calendar recording the dates that he worked for Bynum & Sons Plumbing, he reiterated that he "did keep all the paperwork." (Tr. 6/25/14 at 31).

Plaintiff identified his Exhibit 2 which is a copy of the 1099 for the year 2009 received from Bynum & Sons Plumbing and selected pages from his 2009 federal tax return which was prepared by an accountant. (Tr. 6/23/14 at 44-45). Plaintiff supplemented Exhibit 2 due to the fact that an amended return was filed, after an audit by the Internal Revenue Service, identified as Exhibit 2A.[9] (Tr. 6/25/14 at 5-10, 23-24).

Plaintiff also identified his Exhibit 3 which is a copy of the 1099 for the year 2010 received from the business and selected pages from his 2010 federal tax return which was prepared by an accountant. (Tr. 6/23/14 at 47-48). With respect to this tax return, Plaintiff Holland was also questioned on cross-examination about the amounts identified on the Profit and Loss From Business page (Exhibit 3, 10-4), and he was not able to explain the entries (Id. at 62-63; Tr. 6/25/14 at 25-26).

---

[9]Plaintiff Holland again stated that he could not explain about the audit "because [he] really do[es] not know taxes . . . ." (Tr. 6/25/14 at 23).

Additional facts will be set forth as necessary during discussion of Plaintiff's claims for damages.

## II.    Plaintiff's Claims for Damages

Based on the information provided by the testimony of Ms. Saunders and Plaintiff Holland, Plaintiff claims that he "typically worked from 8:30 a.m. until 9:00 p.m. or 12½ hours per day." [Doc. 72 at 11 n.10, 12 n.12 & n.14].  His workweek is Monday through Saturday [Id. at 10]; and he acknowledged being off approximately two weeks per year for vacation and being "also off from work on other occasions during the relevant time period" [Id. at 10].  Based on this information, and "to align with Plaintiff's annual Federal Income tax returns[,]" Plaintiff Holland divided his request for damages into three time periods:  (1) March 23, 2008, through December 31, 2008, and provided a chart (Exhibit A) submitted to support a calculation that, for the 221.29 days Plaintiff worked during this period, at 12½ hours a day, there were 1,617.14 "regular hours" and 1,148.96 "overtime hours"; (2) January 1, 2009, through December 31, 2009, and provided a chart (Exhibit B) submitted to support a calculation that, for the 295.17 days Plaintiff worked this period, at 12½ hours a day, there were 2,085.71 "regular hours" and 1,603.87 "overtime hours"; and (3) January 1, 2010, through December 31, 2010, and provided a chart (Exhibit C) submitted to

10

support a calculation that, for the 281.17 days Plaintiff worked during this period, at 12½ hours a day, there were 2,085.71 "regular hours" and 1,428.87 "overtime hours." [Id. at 11-12].  Plaintiff made no attempt to calculate his "regular hours" or "overtime hours" based on a "workweek."

Plaintiff also did not attempt to determine his "regular rate of pay" but, instead, based his calculation of damages on the amount of minium wage[10] that he should have been paid using the total "regular hours" he calculated for each of the three time periods.  To calculate the overtime wages he should have been paid, Plaintiff used the "overtime hours" he calculated for each time period multiplied by one and one-half times the minimum wage for the period.  [Id. at 13-14].  Using this method, Plaintiff Holland claims that he should have earned the following minium wage and overtime wages for each period as follows:  (1) March 23, 2008, through December 31, 2008, minimum wages of $10,072.29 and overtime wages of $10,360.02, for a total of $20,432.31; (2) January 1, 2009, through December 31, 2009, minimum wages of $14,305.43 and overtime wages of $16,485.67, for a total of $30,791.09; and (3)

---

[10]The applicable minimum wages are:  July 24, 2007, through July 24, 2008, $5.85; July 24, 2008, through July 24, 2009, $6.55; and July 24, 2009, through December 31, 2010, $7.25.  [Doc. 72 at 13 n.16].

AO 72A
(Rev.8/82)

January 1, 2010, through December 31, 2010, minimum wages of $15,121.43 and overtime wages of $15,538.95, for a total of $30,660.38.  [Id. at 14-15].

Plaintiff then determined the amount that he claims he was not paid for each time period as required by the FLSA.  Plaintiff used the amount of his commission compensation for each year paid by Bynum & Sons Plumbing (for 2008, $58,978.00; for 2009, $65,343.12; and for 2010, $68,994.35) and subtracted the business expenses identified on each of the federal tax returns (for 2008, $46,385.00; for 2009, $54,532.00; and for 2010, $43,127.00), to arrive at his yearly compensation of: $12,593.00 for 2008; $10,811.00 for 2009; and $19,702.00 for 2010.[11]  [Id. at 15]. Therefore, Plaintiff contends that his unpaid minimum and overtime wages for each year are:  2008 - $7,839.31; 2009 - $19,980.09; and 2010 - $10,940.38 for a total of $38,759.79.  Plaintiff also seeks liquidated damages in an equal amount, for a total damage award of $77,519.57.  [Id. at 15-16].  Finally, Plaintiff seeks $9,275.00 in attorney's fees based on a fee rate of $270.00 per hour for 34.35 hours and $350.00 in costs which reflects the federal court filing fee.  [Doc. 73].

---

[11]Plaintiff added back into the amount of net income reflected on his 2010 federal tax form, $4,753.00, the amounts of $12,000 in wages that he paid to himself and $2,967 for meals and entertainment.  [Doc. 72 at 15 n.18; Plaintiff's Exhibit 3 at 10-4].

12

### III.    Findings of Fact and Conclusions of Law

Congress enacted the FLSA in 1938 in order to provide minimum wage and maximum hour protections for workers. <u>Allen v. Board of Public Ed. for Bibb County</u>, 495 F.3d 1306, 1311 (11th Cir. 2007). "Under the FLSA, an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate." <u>Id.</u> at 1314 (citing 29 U.S.C. § 207(a)(1)). "A person is employed if he or she is suffered or permitted to work. 29 U.S.C. § 203(g). It is not relevant that the employer did not ask the employee to do the work. The reason that the employee performed the work is also not relevant. '[I]f the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.'" <u>Id.</u> (citation omitted). Accordingly, "a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work." <u>Id.</u> at 1314-15; <u>and see</u> <u>Anderson v. Mt. Clemens Pottery Co.</u>, 66 S. Ct. 1187, 1192 (1946) (the plaintiff "has the burden of proving that he performed work for which he was not properly compensated"), <u>superseded by statute on other grounds</u>.

13

In a case where the employer has failed to keep accurate records of the number of hours the plaintiff has worked, the employee merely has to show that he "in fact performed work for which he was improperly compensated[,]" and he must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson, 66 S. Ct. at 1192; see also Allen, 495 F.3d at 1315 ("'[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee'") (citation omitted). If the employee makes this *prima facie* showing, "[t]he burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." Allen, 495 F.3d at 1316. If the employer fails in carrying this burden, damages may then be awarded to the employee, "'even though the result be only approximate.'" Id. (citation omitted).

The determination of whether a plaintiff has been paid at least minimum wage and has been compensated for any overtime hours worked is based on a "workweek." See Walters v. American Coach Lines of Miami, Inc., 569 F. Supp. 2d 1270, 1299-1300 (S.D. Fla. 2008) ("the regular rate cannot be less than the minimum wage" and that regular rate, that is, "'regular hourly rate of pay[,] . . . is determined by dividing

14

his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid'") (quoting 29 C.F.R. § 778.109); and see Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1256 (11ᵗʰ Cir. 2001) (same).  "The FLSA focuses on the workweek as its basic unit."  Solano v. A Navas Party Production, Inc., 2011 WL 98819, at *7 (S.D. Fla. January 12, 2011).  The regulations, in fact, specify:  "In calculating overtime pay, . . . '[t]he Act takes a single workweek as its standard, and does not permit averaging of hours over 2 or more weeks.'"  Takacs v. A.G. Edwards and Sons, Inc., 444 F. Supp. 2d 1100, 1114 (S.D. Cal. 2006) (quoting 29 C.F.R. § 778.104, entitled "Each workweek stands alone.");  Johnson v. Wave Comm GR LLC, --- F. Supp. 2d ----, 2014 WL 988510, at *16 (N.D. N.Y. March 14, 2014) ("the averaging of hours over two or more weeks is not permitted");  Solano, 2011 WL 98819, at *7 ("Indeed, 'the FLSA as a whole and the DOL's implementing regulations of the Act highlight the primacy of the workweek concept.'") (citation omitted).  "The regulations go on to state '[t]he rule is applicable to . . . employees paid on a commission basis.'"  Takacs, 444 F. Supp. 2d at 1100 (quoting 29 C.F.R. § 778.104).

The obvious problem with Plaintiff's attempt to prove damages for alleged minimum wage and overtime compensation violations is his reliance on averaging his

yearly compensation with the hours he contends he worked for up to one year time periods.  Plaintiff totally ignored the FLSA's focus on the "workweek" to determine whether there are violations of the Act.   If a party cannot average hours and compensation over a two week period to either prove or disprove violations of the Act, then Plaintiff's attempt to use his total compensation for a year, reduced by what the court finds are rather dubious business expenses, along with calculations of the number of "regular" and "overtime" hours worked for a year, also calculations that the court finds dubious, necessarily fails to meet his burden to establish a *prima facie* case. Plaintiff made no effort to present a *prima facie* case focusing on each workweek as required by the FLSA.

The court further notes that, although Plaintiff wants to argue that his burden of proof is lightened by Defendant Bynum's failure to produce proper and accurate records of the hours Plaintiff worked and his compensation, Plaintiff's efforts to obtain such records to establish his *prima facie* case were all but non-existent.  Plaintiff served discovery requests on Defendant Bynum, proceeding *pro se*, for the records of Bynum & Sons Plumbing - after that entity was no longer actively involved in this litigation due to the bankruptcy filing.  Although advised by Defendant that the records were in the possession of Bynum & Sons Plumbing, Plaintiff made no attempt to

16

obtain any business records from that source.  [Doc. 26, Exhibit 1].  The fact that Defendant's response was deemed insufficient to allow *him* to produce the records at the bench trial in defense should Plaintiff establish a *prima facie* case, does not require the court to find that such records do not exist and were not available to Plaintiff had he simply subpoenaed the records for trial for use in establishing a *prima facie* case. And, given the fact that Defendant attempted to introduce records and, based on this court's observation of Defendant's cross-examination of Plaintiff, used records to identify dates when Plaintiff was not working, the court concludes that at least some records were available for Plaintiff to subpoena and rely on in establishing a *prima facie* case.

Even assuming that proper and accurate records were not maintained by Bynum & Sons Plumbing, Plaintiff still fails to establish a *prima facie* case.  The court accepts Plaintiff's evidence, based on his testimony and the testimony of Ms. Saunders, as to the hours that he worked.  Plaintiff Holland regularly worked six days a week, Monday through Saturday, and he reported to work between 8:00 and 8:30 a.m. and did not arrive at home in the evenings until between 9:00 and 10:00 p.m.  (Id. at 32-35, 49-51). As Plaintiff calculates, this constitutes a 12½ hour day and, assuming that Plaintiff was present at work each day for the week, a 75 hour workweek.  The problem is that the

testimony makes it clear that Plaintiff missed some days during the workweeks at issue - maybe even full workweeks.

During the relevant time period, Ms. Saunders stated that she and Plaintiff Holland took two weeks of vacation time each year. (Id. at 36, 40). If Plaintiff's calculation of hours worked accounts for this vacation time, the court cannot discern on the charts attached to his post-trial brief such is the case. Furthermore, no evidence was offered to explain how and when the vacation time was taken. Although not providing any specific year, Plaintiff Holland also testified that he worked on a New Year's Day and one Easter and that he has worked on the Fourth of July and Christmas Eve. (Tr. 6/25/14 at 15-16). This testimony indicates that Plaintiff did not work these holidays every year, and the court cannot determine if the charts relied on by Plaintiff [Doc. 72, Exhibits A, B, and C] account for these days off. Plaintiff Holland did not work Memorial Day, Labor Day, Thanksgiving, and Christmas Day. (Id. at 16-17). Plaintiff Holland did not work one week in September 2009, when the business was closed due to flooding. (Id. at 17). He also did not work four days in 2010 when the business was closed due to snow in January and one week in January 2010 due to an eye injury. (Id. at 17, 22). Again, the court cannot determine from review of the charts supporting Plaintiff's calculation of hours worked that he properly accounted for all

18

of this time off.  Finally, Plaintiff testified that he did not work on the following days due to attendance at plumbing school:  October 16, 23 and 30; November 6, 13, 16, 20; and December 6.  (Id. at 17).  As best the court can ascertain, the information on these charts is not based on testimony introduced during the bench trial but, instead, reflect an arbitrary determination of days worked for each month during the time at issue.  These charts demonstrate why minimum wage and overtime compensation violations are based on a workweek not by manipulating hours and yearly wages over a span of months.

And, assuming that the court could determine the number of hours that Plaintiff worked for each week during the almost three years at issue, Plaintiff did not produce any evidence reflecting his compensation for each of those workweeks.  Plaintiff apparently made no effort to do so because he never intended to rely on evidence of that nature - despite the fact the Act requires such proof and despite the fact that District Judge Forrester identified this failure as one of the reasons for denying Plaintiff's summary judgment motion on damages.  [Doc. 46 at 12].  Plaintiff was not paid in a lump sum at the end of each year; the record before the court is devoid of any indication of when or in what amounts Plaintiff was compensated.  The court finds that Plaintiff, at a minimum, should have produced some record of his compensation, for

example, direct deposit statements or payment stubs - Plaintiff, after all, testified that he kept every record concerning the days he worked.  (Tr. 6/25/14 at 31).

Even more problematic is Plaintiff's attempt to reduce his compensation by deducting the amount of business expenses reflected on his 2008, 2009 and 2010 federal tax returns from his yearly compensation of $58,978.00 in 2008, $65,343.12 in 2009, and $68,994.35 in 2010 as reflected on his tax returns and 1099s.  After making these questionable deductions, Plaintiff contends that he only earned (although working approximately 75 hours a week) $12,593.00 in 2008, $10,811.00 in 2009, and $19,702.00 in 2010.  [Doc. 72 at 15-16].  There are a number of problems with this attempt to use his business expenses as reflected on this federal income tax returns.

First, Plaintiff was unable to explain the information that was used to arrive at the expenses reflected on his tax returns except to repeatedly state that he kept every single receipt for these expenses and turned over everything to his accountant.  (Tr. 6/23/14 at 57-59, 62-63; Tr. 6/25/14 at 23, 25-26, 31).  If Plaintiff had all of these records, he could have - should have - produced the records in order to support his testimony, not only about the nature of the expenses but to allow for allocation of the expenses for a workweek time frame.

Second, based on Plaintiff's testimony, most of the business expense deductions reflected on the federal tax returns apparently were already deducted from Plaintiff's compensation *before* he was paid his commission.  Plaintiff testified that he utilized a vehicle provided by Bynum & Sons Plumbing when working and drove that vehicle home in the evenings.  (Tr. 6/23/14 at 49).  He was compensated for his work on commission, approximately 25% of the amount billed to each customer.  (Id. at 51).  *Before* that commission was paid, Plaintiff testified that the business *deducted* certain expenses, such as, the supplies or parts needed for the plumbing appointment, whether those supplies or parts were obtained from the business or had to be purchased off-site such as from Lowe's.  (Id. at 51-52).  Although Plaintiff Holland was not "paid back" for the cost of the supplies or parts used for a plumbing job, he received the percentage of the total bill charged the customer, which included the cost for those supplies and parts, as his commission.  (Id. at 52).  When asked "[w]hat other things . . . Bynum & Sons *charge[d him] for before they paid you the money that showed up on a 1099*" (Id. at 53; emphasis added), Plaintiff Holland listed these items:  uniforms, gas, worker's compensation, liability insurance, automobile insurance, $145.00 per week for use of the vehicle, and tires.  His counsel even noted the discrepancy with Plaintiff's

21

testimony about the deduction from his compensation for tires and the fact that a business expense deduction for tires was reflected on his tax returns.  (Id. at 53-54).

There are more discrepancies with Plaintiff's alleged business expense deductions.  The tax returns reflect deductions for supplies and parts or cost of goods sold, for uniforms and for insurance, as three examples of items which Plaintiff testified were deducted from his commission before he was paid.[12]  (Plaintiff's Exhibit 1 at 08-1 and 08-2; Plaintiff's Exhibit 2 at 09-2 and 09-3; and Plaintiff's Exhibit 3 at 10-4 and 10-5).  And, if, as Plaintiff testified, gas[13] and the $145.00 per week charge for usage of the vehicle was deducted before Plaintiff was compensated, the court is at a loss to understand what business expense could possibly account for the large deduction for each year reflected on the tax returns, that is, the "Car and truck

---

[12]The material and supplies, or parts - goods sold, represent a significant business expense deduction reflected on each of Plaintiff's tax returns: $12,511.00 in 2008 (Plaintiff's Exhibit 1 at 08-1); $19,067.00 in 2009 (Plaintiff's Exhibit 2 at 09-2); and $21,114.00 in 2010 (Plaintiff's Exhibit 3 at 10-4).  The court also notes that the entries for these "expenses" are not consistent for all three years.  In 2010, the deduction for "supplies," which had been accounted for under Expenses in 2008 and 2009, moved to Income, Cost of goods sold, in 2010.  (Plaintiff's Exhibit 3 at 10-4).

[13]Plaintiff's testimony was conflicting on whether gas was deducted from his compensation before he was paid.  (Tr. 6/23/14 at 53).

AO 72A
(Rev.8/82)

expenses" of $29,281.00 in 2008 (Plaintiff's Exhibit 1 at 08-1), of $30,649.00 in 2009 (Plaintiff's Exhibit 2 at 09-2), and of $20,783.00 in 2010 (Plaintiff's Exhibit 3 at 10-4).

Third, the court declines to accept Plaintiff's use of the business expense deductions on his federal tax returns to reduce his compensation for each year based on entries that the court simply cannot discern, given the testimony at the bench trial, as having any relationship to work for Bynum & Son's Plumbing.  For example, in 2008, Plaintiff included $70.00 for advertising and $90.00 for office expenses. (Plaintiff Exhibit 1 at 08-1).  And in 2010, Plaintiff included $741.00 for offense expenses and $478.00 for computer equipment.  (Plaintiff's Exhibit 3 at 10-4 and 10-5).

While Plaintiff may have had some legitimate deductions for expenses - *incurred after he was paid his commission*, the federal tax returns Plaintiff offered, without supporting documentation or his ability to explain any of the entries and which reflect deductions for expenses that Plaintiff testified had already been deducted from his compensation, do not provide reliable evidence of the amounts of those legitimate deductions.  Accordingly, even if the court accepted Plaintiff's ill-founded attempt to base the alleged FLSA violations on the three periods of time identified by Plaintiff and accepted his calculation of "regular" and "overtime" hours for each of those time

23

frames, resulting in the total compensation he claims he was due of: (1) March 23, 2008, through December 31, 2008, minimum wages of $10,072.29 and overtime wages of $10,360.02, for a total of $20,432.31; (2) January 1, 2009, through December 31, 2009, minimum wages of $14,305.43 and overtime wages of $16,485.67, for a total of $30,791.09; and (3) January 1, 2010, through December 31, 2010, minimum wages of $15,121.43 and overtime wages of $15,538.95, for a total of $30,660.38 [Doc. 72 at 14-15], Plaintiff's compensation for the time frames in question well exceed those amounts.

Plaintiff contends that: (1) he should have earned $20,432.31 in 2008 and his income that year was $58,978.00 (Plaintiff's Exhibit 1 at 08-1); (2) he should have earned $30,791.09 in 2009 and his income was $65,343.12 (Plaintiff's Exhibit 2 at 09-1); and (3) he should have earned $30,660.38 in 2009 and his income was $68,994,35 (Plaintiff's Exhibit 3 at 10-1). If the court reduced Plaintiff's yearly income by half to account for after compensation expenses, which the court believes based on the evidence introduced at trial is an excessive reduction, Plaintiff still earned more than he contends was due him under the FLSA. The court finds that he has not established a *prima facie* case of a violation of the FLSA.

## IV.   Conclusion

In the present case, because Plaintiff has failed in his burden to prove that he has performed work for which he has not been paid, it is unnecessary for the court to engage in the burden shifting analysis contemplated in <u>Anderson</u>.  <u>See</u> <u>Allen</u>, 495 F.3d at 1315-16 (citing <u>Anderson</u>, 66 S. Ct. at 1192).  The court concludes that Plaintiff has not established any violation of the FLSA.  Consequently, based upon the foregoing findings of fact and conclusions of law, and pursuant to Fed. R. Civ. P. 58, it is hereby

**ORDERED AND ADJUDGED** that Final Judgment shall be entered in favor of Defendant Scott Bynum and against Plaintiff James Holland and that the Clerk of Court is **DIRECTED** to enter this document on the civil docket as a **final judgment** pursuant to Rule 58 of the Civil Rules of Federal Procedure;

**IT IS FURTHER ORDERED** that Plaintiff's motion [Doc. 73] for attorney's fees and costs be **DENIED**; and

**IT IS FURTHER ORDERED** that the proceeding as to Defendant Bynum & Son's Plumbing is **ADMINISTRATIVELY CLOSED** due to the **STAY** [Doc. 24] resulting from the federal bankruptcy proceeding.

AO 72A
(Rev.8/82)

**SO ORDERED THIS** 11th day of September, 2014.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE